**In re A & T PARTNERSHIP, Debtor.**

**Bankruptcy No. 95–12258.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Feb. 21, 1996.

Thomas J. Geygan, Cincinnati, OH, for Ayer.

J. Michael Debbeler, Cincinnati, OH, for Tessler.

Asst. U.S. Trustee, Cincinnati, OH.

**DECISION RE MOTION TO ABSTAIN OR DISMISS**

BURTON PERLMAN, Bankruptcy Judge.

Pursuant to 11 U.S.C. § 303(b)(3)(A), Irvin J. Tessler, a general partner of the debtor partnership, June 9, 1995 filed an involuntary

petition under Chapter 7 of the Bankruptcy Code against the debtor partnership. The business of the partnership had been the ownership and management of two real estate properties, Hillcrest Tower and the Lykins Property, the latter being a service station/food mart in Springdale, Ohio. At the behest of Tessler, the Common Pleas Court of Ohio on July 18, 1994 had appointed a receiver, Koll Management Services, Inc., as receiver for the Hillcrest Tower, and also on December 15, 1994, of the Lykins Property. When the Common Pleas Court entered a further order which would terminate the receivership on June 10, 1995, the present involuntary petition was filed (June 9, 1995). Tessler sought and was granted an expedited hearing by this court as to whether the receiver should remain in possession after June 10, 1995. Tessler's motion seeking that relief was denied.

Thereafter, on July 21, 1995, Ayer filed a motion to require a bond of Tessler, and also a motion for abstention or to dismiss the case. These motions came on for hearing. It is disposition of these motions which is now before the court. As to the motion for bond, it is only necessary to state in summary fashion that that motion was denied by order entered September 22, 1995. What remains, then, is the motion to abstain or dismiss.

At the outset, the court notes that there has been substantial litigation between Tessler and Ayer in the state court. Tessler has provided us with a decision dated May 18, 1994, by the First Appellate District of Ohio Court of Appeals in Appeal Nos. C–930133 and C–930134; an opinion dated October 25, 1995, from the same court in Appeal Nos. C–940574, C–940632, C–940780, and C–940849; and an opinion dated December 29, 1995, from the same court in Appeal Nos. C–950027 and C–950195. A review of the decision of the First Appellate District of Ohio Court of Appeals dated May 18, 1994, discloses that the court reviewed the background facts pertinent to the present question before this court. That background is that in 1985 Tessler and Ayer, in order to invest in commercial real estate, formed the present debtor partnership, with Ayer owning a five-sixths interest, and Tessler the remaining one-sixth interest. The partnership agreement contained an arbitration clause which required that all controversies between the parties be submitted to arbitration. Tessler's interest was financed by a loan from Ayer for $100,000.00 and secured by his one-sixth interest in the partnership. On May 20, 1991, negotiations began between Tessler and Ayer for Ayer to purchase Tessler's partnership interest. A controversy arose as to the value to be accorded the interest and negotiations broke down. The court says that Ayer then repossessed Tessler's one-sixth interest in the partnership for an alleged default on the loan.

Tessler on April 30, 1992, filed suit in Hamilton County Common Pleas Court, but trial was stayed pending arbitration pursuant to the partnership agreement. Arbitration was had on August 26, 1992, and the arbitrator determined that Tessler was to pay Ayer $50,714.70, and when this was paid Ayer was to return Tessler's one-sixth interest in the partnership, the award to be in full settlement of all claims submitted to arbitration. Tessler paid the required amount and thereafter the trial court granted Tessler's motion to enter judgment on the award, the judgment entry requiring Ayer to return the one-sixth partnership interest to Tessler. Ayer, on February 24, 1993, took an appeal from the judgment of the Common Pleas Court. Tessler moved the trial court to appoint a receiver for certain properties, but the trial court overruled Tessler's motion. The outcome in the Court of Appeals in its Decision entered May 18, 1994, was that Ayer's assignments of error were overruled by the Court of Appeals, while Tessler's assignment of error with regard to the denial of the appointment of a receiver was granted.

The second decision by the First Appellate District of Ohio Court of Appeals is dated October 25, 1995. From the caption, it appears that it addresses two separate law suits, one by Tessler against Ayer, and the other Ayer against Tessler. This opinion recounts the identical background as the prior account. It adds to that account the fact that the trial court on remand of the case entered a judgment which appointed Koll as

receiver and Ayer appealed from that order. Ayer filed a motion for relief from judgment with respect to the judgment ordering a return to Tessler of the one-sixth interest in the partnership, Ayer claiming that the partnership had already been dissolved. In that case, said Ayer, Tessler was entitled only to the book value of the one-sixth interest equalling $96,072.00. This motion was overruled at the trial level and Ayer took an appeal. Further, there was a quiet title action by Ayer on August 16, 1994, regarding the Hillcrest Tower and Lykins Property. Tessler's motion to dismiss that action was granted, and Ayer filed an appeal from it.

The third opinion of the First Appellate District of Ohio Court of Appeals dated December 29, 1995, comments that it "is the third set of appeals between these parties based on the same set of facts." The Court of Appeals rejected all of the assignments of error advanced by Ayer in this appeal. The court characterized the appeal as frivolous and awarded attorney's fees to Tessler.

The foregoing summary extracted from the decisions by the First Appellate District of Ohio Court of Appeals discloses that the contending parties before this court, Tessler and Ayer, have been engaged in litigation in the Ohio state courts since 1991. The litigation arose because Tessler wished to withdraw from the partnership. The effect of the desire of a partner to withdraw from this partnership was governed by a partnership agreement which is in evidence before this court. The parties disagreed as to the interpretation of the agreement and it was this which led to the arbitration, the litigation in the Common Pleas Court, and the appeals in the Appellate Court. We regard it as significant that a receiver was installed for the subject properties at the behest of Tessler, and it was only when the Common Pleas Court concluded that the receivership should be terminated that Tessler filed the present involuntary petition. The state court entry terminating the receivership is before us. Termination resulted after the state court appointed an auditor who, after investigating the affairs of the debtor, concluded that there was no sign of irregularity. Tessler's first initiative here was to ask of this court that we retain the receiver in possession. As we have noted, that relief was denied.

Against the foregoing background, Ayer and Tessler presented evidence to this court regarding the Motion to Abstain or Dismiss filed by the debtor. At the hearing in this court, Ayer on behalf of the putative debtor, movant, presented evidence to show that prior to the receivership, debtor was current in its debts, and has been current in its debts subsequent to termination of the receivership. In addition, the evidence presented by movant tended to show that debtor contested substantial debts incurred by the receivership. In opposition to the evidence of movant, Tessler presented testimony to show that there had not been objections to charges by the receivership. It is fair to characterize the evidence as raising an issue of fact as to whether the debtor partnership is liable for all of the receiver's charges.

The foregoing, then, is the factual background and evidence before us. With these matters constituting the evidentiary record, the parties in argument dealt with the question of whether debtor was paying its bills as they came due, as though that were the only dispositive issue. There is, however, a threshold question which must be dealt with before that issue is reached. That question is whether limitations exist on when a general partner may place a partnership in a Chapter 7 involuntary bankruptcy. This court is of the view that the answer to the foregoing question is affirmative. There are limitations on when a general partner may place a partnership in bankruptcy. Further, we hold that this is a case where a general partner may not do so.

At bottom, what is at hand here is a dispute between the only two partners in a general partnership regarding the correct interpretation of their partnership agreement. There has been no indication that there is any creditor interest in the dispute. It is a state court matter which the parties have litigated strenuously for almost five years in the state courts. What has been brought here is just a continuation of the state court litigation. Perceiving liquidation in bankruptcy to be a useful weapon in his struggle against Ayer, Tessler has now attempted to

extend the battlefield to this court. There is, however, no reason to believe that the struggle cannot be concluded in the state courts.

Additionally, there are serious questions of fact regarding debts incurred by a receivership installed by the Common Pleas Court of Ohio, and those disputes ought to be resolved by that court. Moreover, there is no reason to believe that a distribution to partners upon a liquidation in bankruptcy would not involve interpretation of the partnership agreement between the parties, and a resolution of the consequences of that agreement should reside in the state courts where the parties have dealt with it heretofore. Under those circumstances, this court concludes that the present motion should be granted.

We find support for our conclusion *In re ABQ–MCB Joint Venture*, 153 B.R. 338 (Bankr.D.N.M.1993). At p. 341, that court said:

> This Court agrees that it must consider each of the factors suggested by ABQD and MCB. The Court finds these factors mandate dismissal of this proceeding. It appears to this Court that MCB in using the bankruptcy process solely for the purpose of moving state court litigation to this forum. No showing has been made that any preferences exist that may only be dealt with in this forum. No showing has been made that a discharge is important to the debtor. No showing has been made that speed or economy mandate the use of this forum over state court.
>
> Other courts have held that dismissal pursuant to Section 305(a)(1) is appropriate when the petitioning party is seeking to use the bankruptcy court as an alternative approach to state court procedures to resolve intra-company procedures to resolve intra-company management and stockholder disputes. *See Matter of Win–Sum Sports, Inc.*, 14 B.R. 389 (Bankr. D.Conn.1981); *In re Beacon Reef Limited Partnership*, 43 B.R. 644 (Bankr.S.D.Fla. 1984).

*See also In re Axl Industries, Inc.*, 127 B.R. 482 (Bankr.S.D.Fla.1991).

While movant has not stated the basis for his motion, this court regards it as one pursuant to 11 U.S.C. § 305. Accordingly, we dismiss the case because the interests of creditors and the debtor would be better served by such dismissal.