### In re GALAXY BOAT MANUFACTURING CO. INC., Debtor.

**Bankruptcy No. 86–00605.**

United States Bankruptcy Court,
D. South Carolina.

Oct. 15, 1986.

Julio E. Mendoza, Jr., Robinson, Mendoza & Barton, P.A., Columbia, S.C., for debtor.

Roy D. Bates, Columbia, S.C., for Norling.

Clifford O. Koon, Jr., Rogers & Koon, P.A., Columbia, S.C., for Triton.

Charles N. Mayfield, Columbia, S.C., for Fores.

J. BRATTON DAVIS, Bankruptcy Judge.

This matter is before the court upon the involuntary petition filed February 26, 1986, by Norling Studios, Inc. (Norling), Triton Enterprises, Inc. (Triton), and Fores Manufacturing Corporation (Fores) seeking an order for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.* [1]) against Galaxy Boat Manufacturing Company, Inc. (debtor).

The debtor filed an answer in response to the involuntary petition which included counterclaims for attorney's fees, costs and damages.

Section 303(h)(1) provides that an order for relief may be entered only if "the debtor is generally not paying such debtor's debts as such debts become due unless such debts ... are the subject of a bona fide dispute...."

The debtor asserts that both the Norling claim, which is on appeal, and the Triton claim, which is in post trial motions, are subject to bona fide disputes. Each of these claimants asserts that its claim is not subject to dispute—Norling has already obtained a default judgment; Triton disputes the amount of its claim, not the debtor's obligation to pay it.

**1.** Further references to the Bankruptcy Code are by section number only.

**2.** In their joint stipulation, the parties have stipulated as follows: "On October 11, 1985, the Fairmount Companies (Fairmount) and Aaronson Investment Corporation (Aaronson) purchased 50% of the 128 shares of stock in Galaxy, which was all of the shares of stock outstanding, owned by Alvin Roof, Sr. for the sum of $30,-

## FACTS

The debtor is a South Carolina corporation which manufactures and sells boats.

On October 11, 1985, Norling entered a judgment against the debtor in the office of the clerk of court for Richland County, South Carolina, for $55,536.35. This judgment was obtained through a North Carolina default judgment. On October 9, 1985, Norling obtained an order in the Richland County Court of Common Pleas granting full faith and credit to the North Carolina judgment.

The debtor appealed from the judgment, taking exception to the effectiveness of the service of process in the North Carolina action. This appeal is pending.

Triton is an advertising and public relations consultant which contracted with Galaxy to produce an advertising campaign for the debtor. In a law suit arising out of that contract, Triton received a jury verdict in the amount of $55,000. Neither party has appealed the verdict although both parties have filed motions to alter or amend the judgment. The remaining issue in the Triton case is the amount of the judgment.

On December 23, 1985, Fores entered a judgment against the debtor in the office of the clerk of court for Richland County, South Carolina, in the amount of $8,919., which is not subject to a bona fide dispute. This judgment arose from a contract for goods and services.

On October 11, 1985, The Fairmount Companies (Fairmount) and Aaronson Investment Corporation (Aaronson) purchased 50% of the outstanding shares of debtor's stock owned by Alvin Roof, Sr., the consideration for the sale being the sum of $30,000. plus Fairmount's agreement to make loans to Galaxy up to $470,-000. which was to be used for debtor's operating capital.[2]

000.00 and an agreement to make loans to Galaxy up to $470,000.00 for operating capital to be repaid dollar for dollar with an obligation of $470,000.00 to Alvin Roof, Sr., which is not reflected on the balance sheets of Galaxy as a liability, both obligations being subordinate to a pre-existing obligation to Alvin Roof, Sr. of $100,000.00."

As of May 31, 1986, the debtor's overdue business accounts, not including the judgments of Norling and Triton, totaled approximately $1,673,000.

The debtor has been unable to make payments when due on secured obligations to South Carolina National Bank and Citizens and Southern National Bank. Extensions on past due balances and forbearances on defaults have been granted to the debtor by some of its secured creditors.

The debtor had a net operating loss of more than $121,000. during the fiscal year beginning September 1, 1985. The debtor's May 1986 balance sheet shows: a negative cash balance of $539,960.59; $1,295,190.13 in trade accounts receivable, with approximately 50% considered collectible; trade accounts payable of $1,669,261.53, excluding the Norling and Triton judgments; and the allowance for doubtful accounts of $15,546.96.

The petitioners have requested the appointment of a Chapter 11 trustee pursuant to § 1104.

### ISSUES

1. Whether the claims of Norling and Triton are subject to bona fide disputes.

2. Whether the claim of Norling is contingent as to liability.

3. Whether the debtor is generally paying its debts as they become due.

4. Whether the involuntary petition for relief was filed in bad faith.

### DISCUSSION

#### I

*Are the claims of Norling and Triton subject to bona fide disputes?*

#### A

■ As stated earlier, Norling obtained a default judgment against the debtor in North Carolina which judgment was entered in Richland County, South Carolina, and granted full faith and credit by the Richland County Court of Common Pleas.

Although the debtor has appealed the Richland County order and the appeal is pending, the claim of Norling is not the subject of a bona fide dispute as contemplated by § 303(h)(1).

[A] claim based upon an unstayed judgment as to which an appeal has been taken by the debtor is not the subject of a bona fide dispute. Once entered, an unstayed final judgment may be enforced in accordance with its terms and with applicable law or rules, even though an appeal is pending. [citations omitted]. The filing of an involuntary petition is but one of many means by which a judgment creditor may seek to attempt collection of something upon its judgment.

It would be contrary to the basic principles respecting, and would effect a radical alteration of, the long standing enforceability of unstayed final judgments to hold that the pendency of the debtor's appeal created a 'bona fide dispute' within the meaning of Code § 303.

*In re Drexler,* 56 B.R. 960, 967 (Bankr.S.D. N.Y.1986).

#### B

■ The parties have stipulated that the dispute over Triton's claim relates to the amount of the judgment entered on the verdict of the state court jury.

In *Matter of Covey,* 650 F.2d 877 (7th Cir.1981), the court set out a three part test for determining whether a disputed debt should be excluded from the "generally paying debt" determination. There the court stated that the debt is excludable only:

[U]nder the following circumstances: 1) the dispute is whether any claim exists, *not merely regarding the amount of a claim;* 2) the dispute can be examined without substantial litigation of legal or factual questions; and 3) the interests of the debtor in defeating an order of involuntary bankruptcy outweigh creditors' interest in achieving a somewhat more rapid determination of the involuntary bankruptcy question.

*Covey* at 883–84. (Emphasis added).

In applying this test,

[B]ankruptcy courts must initially examine the nature of the dispute claimed. If

the debtor merely has a colorable dispute as to the *amount* of a claim, there is no reason why the debt should be excluded in the determination of the 'generally paying debts' standard. As we have discussed, the goals of the new Code, in such cases, are to resolve the question of whether the debts are paid first, and to examined the disputes and defenses later.

*Covey* at 883.

Because the debtor stipulated that the only issue in Triton's claim was the amount of the judgment, not whether a claim exists, it has failed the first prong of the *Covey* test.

Inasmuch as the debt in question has not met the first prong of the *Covey* test, it is not necessary for the court to consider the other requirements.

## II

### *Is the Norling claim contingent as to liability?*

■ A claim is contingent as to liability within the meaning of § 303 if "... the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred." *In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr.S.D.Tex.1980).

Here, Norling has received a summary judgment against the debtor on an obligation that arose from their prior transaction. The debtor now asserts that this debt is owed by a third party.

*In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr.S.D.Tex.1980) states that "... if a legal obligation to pay arose at the time of the original relationship, but that obligation is subject to being avoided by some future event or occurrence, the claim is not contingent as to liability, although it may be disputed as to liability for various reasons."

"The fact that the alleged debtor disputes about half of the claim and asserts a counterclaim does not make the claim 'contingent'. If it did, any debtor could defeat any involuntary petition merely by refusing to concede the claim." *In re Duty Free Shops Corp.*, 6 B.R. 38, 39 (Bankr.S.D.Fla. 1980).

Accordingly, the court holds that the Norling claim is not contingent as to liability.

## III

### *Is the debtor generally not paying its debts as they become due?*

■ It appears that the debtor generally is not paying its debts as they have become due.

"Under § 303(h), an order for relief can be granted on a contested involuntary petition only if the petitioning creditors establish that the Debtor is not paying his debts as they become due. (citations omitted). In order to carry its burden, the creditors must show more than just the existence of a few unpaid debts." (citation omitted). *In the Matter of Cinnamon Lake Corporation*, 48 B.R. 70, 72 (Bankr.M.D.Fla. 1985).

"The 'generally not paying' test is to be applied as of the date of filing of the involuntary petition...." *In the Matter of Bishop, Baldwin, Rewald, Dillingham,* 779 F.2d 471, 475 (9th Cir.1985).

In determining whether a debtor is paying its debts,

A starting point in the inquiry is to employ what is termed the mechanical test which is comprised of five factors: the timeliness of payments on past due obligations; the amount of debts long overdue; the length of time during which the debtor has been unable to meet large debts; any reduction in the debtor's assets; and the debtor's deficit financial situation. .... Although offering guidance, the mechanical test must be employed with regard to any unique circumstances attendant to a particular proceeding.

*In re Dakota Lay'd Eggs,* 57 B.R. 648, 657 (Bankr.D.N.D.1986). (Citations omitted).

### A

As to the timeliness of the alleged debtor's payments on the past due amounts, the court takes notice that the debtor has stipulated that it has been "unable to make payments when due on secured obligations" to certain creditors.

### B

In regard to the amount of debts long overdue, there is evidence that the overdue accounts have been reduced from approximately $900,000. to approximately $200,-000.; the reduction of some $700,000. has been effectuated by the debtor's borrowing from Fairmount and Alvin Roof, Sr.

This apparent substitution of debt does not satisfy the debt; it merely postpones it.

### C

As to the length of time that the debtor has been unable to meet its large debts, the debtor has stipulated that it has been unable to make payments when due on secured obligations. On October 11, 1985, Norling entered a judgment against the debtor in Richland County, South Carolina, in the amount of $55,536.35. This judgment was obtained in North Carolina upon a complaint for goods and services furnished, and the debtor's appeal, which is based upon ineffective service of process, is pending in the South Carolina Circuit Court. On December 23, 1985, Fores entered a judgment against the debtor in Richland County, South Carolina. The Fores judgment arose from a contract for goods and services and amounted to $8,919. Although the debtor has appealed the Norling judgment, nearly one year has passed since the judgment was entered in South Carolina. Over nine months have passed since the Fores judgment was entered. These two instances indicate that the debtor is unable to meet large debts even after the lapse of a considerable time period.

### D

In considering the reduction of the debtor's assets, the court is mindful that while the debtor has reduced its overdue obligations to its creditors (many of which were unsecured) it has given security interests in its assets to Fairmount and to Alvin Roof, Sr. thereby reducing the assets available to the debtor's general, unsecured creditors in the event of a liquidation.

### E

In evaluating the financial situation of the debtor, the court notes that the influx of capital from Fairmount may, or may not, bring about a financial rehabilitation of the debtor; but, as of the filing of the involuntary petition, it is clear that the financial situation of the debtor was bleak—the debtor having posted a loss for the first part of its current fiscal year.

### IV

*Was the petition filed in good faith?*

Yes. There is no evidence that persuades the court that the petition was filed in bad faith.

"It is well established that good faith is presumed on the part of the party or parties filing an involuntary petition and that the burden of proving bad faith rests on the objecting party." *In re CLE Corp.,* 59 B.R. 579, 583 (Bankr.N.D.Ga.1986).

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. The claims of the petitioning creditors are not subject to bona fide disputes.

2. Norling's claim is not contingent as to liability.

3. The debtor is generally not paying its debts as they become due within the meaning of § 303(h)(1)

4. The petition was not filed in bad faith.

Therefore, the order for relief sought by petitioners should be granted.

An appropriate order shall be issued, and a hearing on the petitioners' request for

the appointment of a Chapter 11 trustee shall be scheduled.